**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN VRDOLYAK, individually and on behalf of those similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>AVVO, INC.,<br><br>    Defendant. | No. 2016 CV 2833<br><br>Hon. Robert W. Gettleman |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT**


David P. Sanders (ARDC #2452359)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

Bruce E.H. Johnson
Ambika K. Doran
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................................ 2

    A. Avvo.com ...................................................................................................................... 2

    B. Earlier Unsuccessful Lawsuits Against Avvo ............................................................... 3

    C. Procedural History ......................................................................................................... 4

III. ARGUMENT ........................................................................................................................ 5

    A. The Court Should Dismiss Both Claims Because the First Amendment Provides Absolute Protection for Avvo's Profiles. ...................................................................... 5

    B. Plaintiff Has Failed to State a Claim Under Illinois Law. ............................................. 7

        1. Avvo's publication of names on profile pages is a "non-commercial" use exempt under the Illinois Right of Publicity Act. ................................................................. 8

        2. The common law claim fails for the same reasons and because the IRPA expressly preempts it. .......................................................................................................... 10

IV. CONCLUSION ................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alam v. Miller Brewing Co.*,
   709 F.3d 662 (7th Cir. 2013) ...................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................5

*Best v. Berard*,
   776 F. Supp. 2d 752 (N.D. Ill. 2011) .....................................................................................8, 9

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ...................................................................................................5

*Browne v. Avvo, Inc.*,
   525 F. Supp. 2d 1249 (W.D. Wash. 2007) ....................................................................3, 4, 10

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   149 F.3d 679 (7th Cir. 1998) ...................................................................................................6

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975) .................................................................................................................5

*Davis v. Avvo, Inc.*,
   2012 WL 1067640 (W.D. Wash. 2012) .........................................................................3, 4, 10

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ...................................................................................................7

*Leidholdt v. L.F.P. Inc.*,
   860 F.2d 890 (9th Cir. 1988) ...................................................................................................6

*Netherlands Ins. Co. v. Knight*,
   2014 WL 3376873 (C.D. Ill. July 10, 2014) ............................................................................8

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................................................6

*Nieman v. Versuslaw, Inc.*,
   512 F. App'x 635 (7th Cir. 2013) ............................................................................................6

*Oklahoma Publishing Co. v. District Court*,
   430 U.S. 308 (1977) .................................................................................................................5

*Pitt News v. Pappert*,
 379 F.3d 96 (3d Cir. 2004) ................................................................................................. 7

*Smith v. Daily Mail Publ'g Co.*,
 443 U.S. 97 (1979) ............................................................................................................ 5

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011) .......................................................................................................... 5

*Zahn v. N. Am. Power & Gas, LLC*,
 815 F.3d 1082 (7th Cir. 2016) .......................................................................................... 8

**State Cases**

*Abbs v. Lily's Talent Agency, Inc.*,
 2012 WL 6953496 (Ill. App. Ct. Sept. 26, 2012) ......................................................... 8, 9

*Blair v. Nev. Landing P'ship*,
 859 N.E.2d 1188 (Ill. App. Ct. 2006) .................................................................... 2, 10, 11

*Leopold v. Levin*,
 259 N.E.2d 250 (Ill. 1970) ............................................................................................... 11

*Schivarelli v. CBS, Inc.*,
 776 N.E.2d 693 (Ill. App. Ct. 2002) ................................................................................. 9

*Trannel v. Prairie Ridge Media, Inc.*,
 987 N.E.2d 923 (Ill. App. Ct. 2013) ...................................................................... 9, 10, 11

**Federal Statutes**

28 U.S.C. § 1404(a) .................................................................................................................... 4

**State Statutes**

765 ILCS 1075/5 ......................................................................................................................... 8

765 ILCS 1075/35(b)(2),(4) ....................................................................................................... 8

765 ILCS 1075/55 ..................................................................................................................... 11

765 ILCS 1075/60 ..................................................................................................................... 11

Illinois Right of Publicity Act, 765 ILCS 1075 et. seq. ..................................................... *passim*

Wash. Rev. Code § 19.86.020 .................................................................................................... 3

I. INTRODUCTION

Plaintiff John Vrdolyak is an Illinois attorney. Defendant Avvo, Inc. publishes free profiles of 97 percent of attorneys in the United States—including Mr. Vrdolyak. The First Amended Complaint alleges this "online directory" includes professional information from "public records such as bar admissions and other court or regulatory records," including name, years of practice, and other professional information. Much like the pages of a newspaper or telephone directory, Avvo's attorney listings also include advertisements, including for competitors, but none that use Mr. Vrdolyak's name. Plaintiff alleges the inclusion of advertising on his profile page violates the Illinois Right of Publicity Act, 765 ILCS 1075 et. seq., and misappropriates his identity under the common law. In addition to asserting a personal claim, he seeks to maintain this action as a representative of other similarly situated attorneys.

Even assuming, for purposes of this Motion, the truth of the well-pled factual allegations in the Amended Complaint, the causes of action asserted in both counts fail to state a claim upon which relief can be granted as a matter of law.

*First*, Avvo's allegedly wrongful conduct—the republication of information about a lawyer taken from public records—is not actionable under the First Amendment, irrespective of whether Avvo includes advertising on profile pages. Under settled law, speakers and publishers of protected speech do not lose their First Amendment rights merely because they sell advertising to generate revenue. Under Mr. Vrdolyak's theory, a right-of-publicity claim would lie against any advertising-supported newspaper or magazine merely for publishing public information about a person because they also publish ads nearby. There is no basis for imposing liability on this theory. As a result, the Court should dismiss both claims with prejudice.

*Second*, Count I of the First Amended Complaint, for violation of the Illinois Right of

Publicity Act ("IRPA"), fails for an independently sufficient reason: The IRPA exempts the use of someone else's name for non-commercial purposes, and Avvo's use of Mr. Vrdolyak's name in its "roster" of lawyers—*not* in an advertisement—is a non-commercial use. Illinois courts, too, have recognized a "non-commercial purpose" does not become "commercial" merely because the publisher generates revenue through advertising.

*Finally*, the Court should dismiss Count II, for violation of the common law right of publicity, because the IRPA "completely replaced" this tort. *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) (emphasis added).

Mr. Vrdolyak has failed to state any claim on which relief can be granted. Any proposed amendment would be futile because no additional facts could cure his defective legal theories. The Court should dismiss the claims with prejudice, and, pursuant to the IRPA, award Avvo the attorneys' fees and costs it incurred in bringing this Motion.

## II. FACTUAL BACKGROUND

### A. Avvo.com

As alleged in the First Amended Complaint, Avvo operates Avvo.com, which publishes profiles of more than 97 percent of attorneys in the United States, including 60,000 in Illinois. First Amended Complaint [Dkt. 21] ("FAC") ¶¶ 8-9, 23. The FAC admits the profiles include information from "public records such as bar admissions and other court or regulatory records." *Id.* ¶ 8. The profiles include the attorney's name, education, address, phone number, and practice area. *See, e.g.*, FAC Ex. 3. Each attorney has a rating on a scale of 1 to 10. *See, e.g.*, *id.*

The Complaint admits Avvo does not charge attorneys or consumers for providing this information. *Id.* ¶ 9. Instead, Avvo allegedly "generates revenue by selling legal services, advertising, and other services primarily to lawyers." *Id.* ¶ 10. Specifically, the FAC alleges, Avvo operates a program called "Avvo Advertising," which allows lawyers to purchase

2

advertising and "define who sees your ad based on practice area and geography." *Id.* ¶ 11 & Ex. 1. In addition, Avvo operates "Avvo Pro," which allows attorneys to further customize their profiles, offer better ways for clients to reach them, access data about visits to their profiles, and remove all advertising from their profile. *Id.* ¶ 14, Ex. 2.

Avvo allows attorneys to "claim" their profile for free to make changes, including by highlighting their practice areas, experience, contact information, speaking engagements, awards, and case histories. *See* FAC Ex. 3.

### B. Earlier Unsuccessful Lawsuits Against Avvo

Given the nature of its business—compiling data and reviews about lawyers—Avvo is no stranger to litigation. In at least two cases, attorneys have challenged its publication of profiles. In both, courts dismissed the claims on motions to dismiss. *Davis v. Avvo, Inc.*, 2012 WL 1067640 (W.D. Wash. 2012); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007).

In *Browne*, two attorneys filed a putative class action challenging Avvo's rating system. *Browne*, 525 F. Supp. 2d 1249. The Court held the ratings were "absolutely protected by the First Amendment." *Id.* at 1251. To support their claim under the Washington Consumer Protection Act—which applies to conduct in "trade or commerce," Wash. Rev. Code § 19.86.020—the plaintiffs argued Avvo's "offer to sell advertising space to attorneys transforms all of defendants' activities into trade or commerce." 525 F. Supp. 2d at 1254. The court concluded it was "hard to imagine how an information clearinghouse and/or ratings service could be considered 'commerce.'" *Id.*

In *Davis*, a Florida lawyer sued Avvo for false advertising, unauthorized use of likeness for a commercial purpose (the same claim Mr. Vrdolyak alleges here), and violations of the Florida Deceptive and Unfair Trade Practices Act. *Davis*, 2012 WL 1067640, at *4. The court dismissed the claims. *See id.* Calling the website "a vehicle for discussion of public issues," *id.*

3

at *3, the court adopted the *Browne* court's holding that the act of publishing information about an attorney is not "trade or commerce." *Id.* at *6-7.

### C. Procedural History

On February 4, 2016, Moria Bernstein filed a Class Action Complaint in the Circuit Court of Cook County, Illinois, Chancery Division. Dkt. No. 1 Ex. A. Avvo removed the matter to this Court. Dkt. No. 1. It then filed a motion to transfer venue under 28 U.S.C. § 1404(a), arguing Ms. Bernstein had claimed her profile and agreed to a forum-selection clause requiring her to litigate in Washington State. Dkt. No. 11, 13. Ms. Bernstein claimed she needed discovery concerning whether she claimed her profile. The Court allowed her limited discovery and set a June 3, 2016 deadline for her to response to the motion to transfer. Dkt. No. 14.

Ms. Bernstein did not pursue any discovery. Instead, on May 17, 2016, her counsel filed a First Amended Complaint that removed her as the named plaintiff and substituted another Illinois attorney, John Vrdolyak, as plaintiff and putative class representative. Mr. Vrdolyak's Avvo profile states he has been licensed to practice since 1989, practices real estate law in Chicago, and attended the University of Notre Dame and the University of Chicago Law School. FAC Ex. 3. It also provides information for his law firm, the Vrdolyak Law Group, LLC. *Id.* Plaintiff does not allege that any of this information is incorrect. His profile page includes an advertisement for Avvo's fixed-fee legal help, as well as a "SPONSORED LISTINGS" section, which lists several lawyers' names, pictures, and contact information. *Id.* Further down is a box titled "ADVERTISING," which displays another lawyer's name, picture, and contact information. *Id.* No advertisements mention or refer to Mr. Vrdolyak himself. *Id.*

Plaintiff asserts Avvo violated the IRPA (Count I) and misappropriated his identity under the common law (Count II) by placing advertising on his profile page. FAC ¶¶ 29-47.

4

### III. ARGUMENT

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this Court must draw reasonable inferences and facts in favor of the non-movant, it need not accept as true any legal assertions or recital of the elements of a cause of action "supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). The court may dismiss with prejudice, without leave to amend, "if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). Under this standard, dismissal with prejudice is proper here.

**A.  The Court Should Dismiss Both Claims Because the First Amendment Provides Absolute Protection for Avvo's Profiles.**

It is a fundamental principle of United States Supreme Court jurisprudence that the First Amendment protects the republication of publicly available information, including information far more sensitive than at issue here. For example, in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the Court held a state could not sanction a broadcaster for airing the name of a rape victim obtained from publicly available judicial records. Similarly, in *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308 (1977), the Court held that a court order restricting the release of publicly available information regarding an 11-year-old murder defendant violated the First Amendment. *See also Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979) ("state action to punish the publication of truthful information seldom can satisfy constitutional standards"); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) ("An individual's right to speak is implicated when information he or she possesses is subject to restraints on the way in which the information might be used or disseminated.").

5

This core First Amendment principle precludes Mr. Vrdolyak's claims as a matter of law. As even he concedes, Avvo obtains information about lawyers "not from the attorneys themselves, but instead from scouring ***public records*** such as bar admissions and other court or regulatory records." FAC ¶ 8 (emphasis added). Avvo cannot be liable as a matter of law for republishing information it obtained from such records. If this principle applies to information relating to rape victims and minors—as the Supreme Court has held—it certainly applies to the republication of biographical information about officers of the court and their legal practices.

Mr. Vrdolyak apparently intends to argue Avvo's inclusion of advertisements on profile pages deprives Avvo of its First Amendment protection. *See* FAC ¶¶ 35-38, 44-46. But "speech is protected even when 'carried in a form that is "sold" for profit.'" *Nieman v. Versuslaw, Inc.*, 512 F. App'x 635, 638 (7th Cir. 2013) ("All of Nieman's claims are based on the defendants' republication of documents contained in the public record, so they fall within and are barred by the First Amendment privilege."). Thus, courts routinely hold magazines, newspapers, and other publishers do not lose full First Amendment protection merely because they generate revenue by selling advertisements. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) ("That the Times was paid for publishing the advertisement is as immaterial in this connection as is the fact that newspapers and books are sold."); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication."); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) (A magazine that "is operated for profit does not extend a commercial purpose to every article within it."). And just as it is immaterial to constitutional protections that traditional publishers support themselves with advertising, so, too, it is immaterial that Avvo generates revenue in the same manner.

6

A different rule of the type Mr. Vrdolyak advocates would expose publishers to innumerable right-of-publicity claims by their subjects merely because they sell ads. This is not and cannot be the law. As numerous courts have recognized, advertising revenue is the lifeblood of American media and enables companies such as Avvo to provide the services it does. *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963-64 (9th Cir. 2012) ("Without advertising, the *Seattle Times* would presumably not exist, as the *Seattle Post–Intelligencer* no longer does in printed form. That the yellow pages directories depend financially upon advertising does not make them any less entitled to protection under the First Amendment."); *Pitt News v. Pappert*, 379 F.3d 96, 113 (3d Cir. 2004) (prohibition of alcohol advertising in college newspapers was unconstitutional, explaining the government was "damaging The Pitt News by preventing it, and a small group of similarly situated media, from generating revenue from ads of specific content"). Indeed, this basic advertising business model existed in 1789, when the Founders adopted the First Amendment. It remains dominant today. By purporting to hold Avvo liable for publishing ads alongside constitutionally protected content, Mr. Vrdolyak's theory threatens the fundamental legal protections on which the media relies for its existence.

Decades of First Amendment jurisprudence therefore preclude any argument that the advertising near Mr. Vrdolyak's professional information in Avvo's directory somehow renders the listing of that public-record information devoid of full First Amendment protection. The Court should dismiss Mr. Vrdolyak's claims with prejudice.

### B. Plaintiff Has Failed to State a Claim Under Illinois Law.

Even assuming the First Amendment did not absolutely bar the imposition of liability for Avvo's publication of publicly available information (which it does), this Court should still dismiss this action with prejudice for the separate and independent reasons that Mr. Vrdolyak fails to state a claim upon which relief may be granted for violation of the IRPA and the

7

common-law tort of misappropriation of identity.

### 1. Avvo's publication of names on profile pages is a "non-commercial" use exempt under the Illinois Right of Publicity Act.

To sustain a violation of the IRPA, a plaintiff must show three elements: (1) "the use of an individual's identity" (2) "for commercial purposes" (3) without consent. *Best v. Berard*, 776 F. Supp. 2d 752, 756 (N.D. Ill. 2011) (citing 765 ILCS 1075/30).[1] The IRPA defines a commercial purpose as "the public use or holding out of an individual identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. The IRPA exempts from liability the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign," and "promotional materials, advertisements, or commercial announcements for" such a use. 765 ILCS 1075/35(b)(2),(4). Avvo's publication of profiles falls squarely within the exemption for non-commercial purposes.

Courts construe what constitutes a "commercial" or "non-commercial" purpose "with an eye toward avoiding a First Amendment violation." *Berard*, 776 F. Supp. 2d at 759. "The legislature's intended meaning of 'commercial purpose' was to prohibit transactions where an individual was using another's likeness or identity to make money, or to prohibit items bearing an individual's image from being sold to people." *Abbs v. Lily's Talent Agency, Inc.*, 2012 WL 6953496 ¶ 25 (Ill. App. Ct. Sept. 26, 2012) (citing 90th Ill. Gen. Assem., April 24, 1997, at 230-

---

[1] The IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. Mr. Vrdolyak's claim is premised on Avvo's alleged publication of "names, years of experience, current employers, former employers, educational information, and other professional characteristics." FAC ¶ 34. Of these, only his name meets the statutory definition of "identity."

31).[2] During legislative debate of the IRPA, examples of violations included (1) an advertisement featuring a representative on the back of a bus indicating that he endorses a particular kind of hair tonic; and (2) a food establishment stating the Speaker of the House of Representatives endorsed the establishment's cheeseburger and extra spicy chili. *Id.* (citing 90th Ill. Gen. Assem., May 21, 1998, at 7-8). These examples clearly fall within the ambit of "commercial speech."

But Mr. Vrdolyak does not allege (nor could he allege) Avvo used his likeness ***in an advertisement***. Instead, his allegations concern Avvo's use of his name for a "non-commercial purpose"—specifically, its inclusion in Avvo's lawyer directory. In *Berard*, for example, the defendants filmed an entertainment program called *Female Forces* that featured real-life traffic stops, including a stop in which the plaintiff took a field sobriety test and was arrested. 776 F. Supp. 2d at 754. The Court held the program "conveyed truthful information on matters of public concern protected by the First Amendment," and the use of the plaintiff's image was for "non-commercial purposes" under the IRPA. *Id.* at 758-59; *see also Schivarelli v. CBS, Inc.*, 776 N.E.2d 693, 701 (Ill. App. Ct. 2002) (local news program's use of portion of interview for promoting the news program was not for "commercial purposes"). So, too, here: Avvo's lawyer directory conveys truthful information on matters of public concern: the backgrounds and qualifications of attorneys licensed by the state.

*Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923 (Ill. App. Ct. 2013), is also instructive. In *Trannel*, the defendant published a magazine that generated revenue from advertising. *Id.* at 925. The plaintiff entered a local gardening contest, and the publisher took a

---

[2] This court may consider unpublished Illinois cases. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082 (7th Cir. 2016) (considering unpublished opinion); *Netherlands Ins. Co. v. Knight*, 2014 WL 3376873, at *2 (C.D. Ill. July 10, 2014) (finding "unavailing" argument that opponent could not cite to unpublished Illinois opinion in district court).

photograph of her in her garden.  *Id.* at 926.  The plaintiff won the contest, and the publisher featured the photo in the magazine.  *Id.*  The publisher also used the photo in a "media kit" for advertisers.  *Id.* at 926-27.  The court held use of the photo in the media kit, "held out for purposes of promoting" advertising in the magazine, was commercial.  *Id.* at 930.  But use of the photo in the magazine was for a "non-commercial" purpose, as the article regarding the winners of the garden contest was an attempt to convey news.  *Id.* at 931.  Avvo used Mr. Vrdolyak's name for a similar "non-commercial purpose": to distribute to consumers information about attorneys.  Its use was therefore non-commercial.

Decisions from two other courts regarding Avvo's attorney profiles reinforce this conclusion.  In *Browne* and *Davis*, courts held that Avvo's publication was not "in commerce" within the meaning of a state consumer protection statute.  *Browne*, 525 F. Supp. 2d at 1254; *Davis*, 2012 WL 106740, at *6-7.  *Browne* rejected a similar argument advanced here—that an offer to sell ads transforms Avvo's conduct into "trade or commerce"—stating it was "hard to imagine how an information clearinghouse and/or ratings service could be considered 'commerce.'"  *Browne*, 525 F. Supp. 2d at 1254.

Mr. Vrdolyak has not alleged Avvo used his image in any way other than to list his name and professional information, a purpose the First Amendment and the IRPA protect.  Because Avvo's publication of a directory of licensed lawyers in Illinois constitutes a "non-commercial" use under the IRPA as a matter of law, Count I fails to state a claim.  The defects in the claim are legal in nature because the publication itself is not actionable.  As a result, they cannot be cured by amendment.  The Court should dismiss this claim with prejudice.

> **2. The common law claim fails for the same reasons and because the IRPA expressly preempts it.**

Mr. Vrdolyak also alleges a claim for "misappropriation of identity"—also called the

10

"right of publicity" and "misappropriation of name or likeness." *See* FAC ¶¶ 40-42. But "[t]he [Illinois] Right of Publicity Act … *completely replaced the common-law tort of appropriation of likeness*." *Blair*, 859 N.E.2d at 1192 (emphasis added). "After December 31, 1998, the common-law tort of appropriation of one's likeness *ceased to exist*." *Id.* (emphasis added); *see also Trannel*, 987 N.E.2d at 928 (common-law tort no longer exists). Mr. Vrdolyak cites 765 ILCS 1075/60 for the proposition that such common law claims are "supplemental" to the IRPA claim. FAC ¶ 43. In fact, that provision states precisely the opposite, making clear the IRPA supplants—not supplements—such common law claims: "*Except for the common law right of publicity*, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law…." (Emphasis added.)³ Because there simply is no common law claim for misappropriation of identity, the defects in Count II cannot be cured by any amendment. Accordingly, the Court should dismiss Count II with prejudice, too.

## IV. CONCLUSION

The theory on which Mr. Vrdolyak bases his claims fails to state a claim as a matter of law. Any amendment would therefore be futile. Avvo respectfully asks the Court to dismiss this entire action with prejudice and award it its attorneys' fees and costs in pursuing this motion as provided for under the IRPA. *See* 765 ILCS 1075/55.

DATED this 6th day of June, 2016.

Respectfully submitted,

AVVO, INC.

By: /s/ *Ambika K. Doran*
    One of its attorneys

---

[3] Even if Illinois recognized this tort, Mr. Vrdolyak's claim would fail for the same reason: Avvo did not use his name for a commercial purpose. *See, e.g.*, *Leopold v. Levin*, 259 N.E.2d 250, 256 (Ill. 1970) (no actionable tort where use of plaintiff's likeness in advertisement was in "reference to … the notorious crime to which he had pleaded guilty … a matter of public and, even, of historical record").

11

David P. Sanders (ARDC #2452359)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350


Bruce E.H. Johnson
Ambika K. Doran
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150

## **CERTIFICATE OF SERVICE**

      Ambika K. Doran, an attorney, certifies that on June 6, 2016, she caused a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss First Amended Complaint to be served upon all counsel of record by means of the Court's ECF filing system.

                                              /s/ *Ambika K. Doran*
                                              Ambika K. Doran