**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| JOHN VRDOLYAK, individually and on behalf of those similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>AVVO, INC.,<br><br>        Defendant. | No. 2016 CV 2833<br><br>Hon. Robert W. Gettleman |

**REPLY BRIEF IN SUPPORT OF**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**


David P. Sanders (ARDC #2452359)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350

Bruce E.H. Johnson
Ambika K. Doran
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 622-3150

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ...................................................................................................... 2

     A.     The First Amendment Fully Protects Avvo's Speech............................................ 2

          1.     Mr. Vrdolayk admits Avvo published his name in protected, noncommercial speech................................................................ 2

          2.     The ads on Mr. Vrdolyak's profile page do not transform Avvo's speech into commercial speech................................................... 4

          3.     The authority Mr. Vrdolyak cites is inapposite. ....................................... 6

     B.     Plaintiff Has Failed to State a Claim Under the Illinois Right of Publicity Act.......................................................................................................... 8

III.    CONCLUSION.................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................9

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ...............................................................10, 11

*Bogie v. Rosenberg*,
705 F.3d 603, 608 (7th Cir. 2013) ..........................................................................12

*Bolger v. Youngs Drug Products Corp.*,
463 U.S. 60 (1983).................................................................................................4

*Browne v. Avvo, Inc.*,
525 F. Supp. 2d 1249 (W.D. Wash. 2007)..........................................................8, 10

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980)...............................................................................................3

*Davis v. Avvo, Inc.*,
2012 WL 1067640 (W.D. Wash. Mar. 28, 2012) ................................................8, 10

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ........................................................................ *passim*

*Flentye v. Kathrein*,
485 F. Supp. 2d 903 (N.D. Ill. Apr. 18, 2007)........................................................9

*Hays Cnty. Guardian v. Supple*,
969 F.2d 111 (5th Cir. 1992) ..................................................................................8

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) .....................................................................1, 2, 7, 11

*Maremont v. Susan Fredman Design Grp., Ltd.*,
2011 WL 6101949 (N.D. Ill Dec. 7, 2011)............................................................12

*Nieman v. Versuslaw, Inc.*,
512 F. App'x 635 (7th Cir. 2013) ...........................................................................4

*Peerless Indus., Inc. v. Crimson AV LLC*,
　　2013 WL 5498249 (N.D. Ill. Oct. 1, 2013)..................................................................10

*Reno v. ACLU*
　　521 U.S. 844 (1997).........................................................................................................5

**State Cases**

*Abbs v. Lily's Talent Agency, Inc.*,
　　2012 Il App (1st) 103726-U (Sept. 26, 2012).........................................................11

*Habush v. Cannon*,
　　828 N.W.2d 876 (Wis. Ct. App. 2013) ...........................................................2, 6, 11

*Stewart v. Rolling Stone LLC*,
　　181 Cal. App. 4th 664 (2010) .............................................................................4, 5

*Trannel v. Prairie Ridge Media, Inc.*,
　　987 N.E.2d 923 (Ill. App. Ct. 2013) ........................................................................11

**State Statutes**

765 ILCS 1075/5 ....................................................................................................10

765 ILCS 1075/35 ..................................................................................................10

765 ILCS 1075/55 ..................................................................................................12

**Rules**

Fed. R. Civ. P 8.........................................................................................................9

**Other Authorities**

Eric Goldman & Angel Reyes III, *Regulation of Lawyers' Use of Competitive
　　Keyword Advertising*, 2016 U. Ill. L. Rev. 103 (2016)..............................................6

## I.  INTRODUCTION

Plaintiff John Vrdolyak's lawsuit boils down to one central premise: Avvo's publication of truthful information from public records in a directory of lawyers—which Mr. Vrdolyak admits is constitutionally protected speech—is unlawful because advertising appears next to this truthful information.  If accepted, his theory would threaten all ad-supported media with potentially limitless liability.  Newspapers and magazines exist because they accept ads.  So, too, do programs on television and radio and internet sites like search engines and blogs.  The First Amendment protects this content, just as it protects Avvo's attorney directory.  Illinois' right of publicity statute does not eviscerate this protection simply because ads appear alongside protected content, especially where, as here, the ads do not mention the person asserting the claim.  The court should dismiss this lawsuit with prejudice.

Conceding that the content of Avvo's lawyer directory is truthful, factual, and thus constitutionally protected, Mr. Vrdolyak seeks to evade the consequence of that conclusion by arguing his claims are "not related to the truthful information on the profile pages, but instead are based on Avvo's misappropriation of Plaintiff's and Class members' identities for commercial purposes."  Resp. at 4.  But "misappropriation" is a legal theory, not a fact, and the only facts alleged to support Mr. Vrdolyak's theory are that Avvo accurately published his name and other truthful information about him, and published advertising *near* that information.  This is precisely what the Ninth Circuit held permissible in deciding a yellow pages directory merits full First Amendment protection.  *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012).  In contrast, the defendant in *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014), on which Mr. Vrdolyak heavily relies, published an advertisement that itself featured the name of famed athlete Michael Jordan.  This case is like *Dex Media*, not *Jordan*.

To the extent Mr. Vrdolyak bases his claim on the allegation that advertising on his Avvo

profile page features competitors, this reasoning, too, is flawed. Mr. Vrdolyak does not allege

(nor could he) that Avvo allows attorneys to place ads using his name—only that Avvo allows

attorneys to place ads on the pages of others in the same field and geographic area. Moreover,

the publication of an ad adjacent a competitor's noncommercial listings is no different than a car

dealership opening across the street from an established dealership or a company purchasing

billboard space next to its competitor's office. *See Habush v. Cannon*, 828 N.W.2d 876, 882

(Wis. Ct. App. 2013). This is obviously lawful. Mr. Vrdolyak does not have a right to prohibit

the advertising of his competitors near his Avvo information, any more than he has a right to stop

a competitor from setting up shop next door to him. Even if he did, it is Mr. Vrdolyak's

competitors, not Avvo, that have "used" his name. The First Amendment protects Avvo's

publication of his biographical information.

In any event, the speech falls within an exemption to the Illinois Right of Publicity Act

("IRPA") for "noncommercial purposes." That exemption is for ***all*** noncommercial uses, not

just the examples in the statute, as Mr. Vrdolyak claims. More fundamentally, Mr. Vrdolyak

misunderstands the purpose of the right of publicity: to protect the value of an identity. The

defendant in *Jordan* capitalized on the value of Michael Jordan's identity by publishing his name

in an ad. In contrast, Avvo published Mr. Vrdolyak's name—and the names of approximately

60,000 other Illinois attorneys—in a directory. This cannot support a right of publicity claim.

## II. ARGUMENT

### A. The First Amendment Fully Protects Avvo's Speech.

#### 1. Mr. Vrdolayk admits Avvo published his name in protected, noncommercial speech.

Mr. Vrdolyak's response contains a crucial admission: Avvo engages in "protected

speech—i.e., publishing information about attorneys." Resp. at 10. The response also fails to

dispute one other key fact: Mr. Vrdolyak's name appears only among this (protected) information, ***not*** in an ad. This should be the end of the inquiry. The First Amendment protects Avvo's publication of biographical information, and the Court should dismiss the lawsuit.

To argue otherwise, Mr. Vrdolyak claims "Avvo's use of Plaintiff's and Class members' identities is commercial speech," meaning "the First Amendment does not bar Plaintiff's claims." Resp. at 6. Mr. Vrdolyak offers no authority for the proposition that commercial speech is without First Amendment protection, and it is not.[1] But even setting this aside, Avvo's publication of attorney biographical information is noncommercial. Mr. Vrdolyak repeatedly and relentlessly focuses on the advertisements that appear alongside this information on attorney profiles—without alleging that his name appears in any of those ads.

For example, Mr. Vrdolyak advocates a three-part test to decide whether speech is commercial, which requires examining whether (1) the speech is an advertisement; (2) the speech references a specific product; and (3) the underlying motive of the speaker is economic. Resp. at 6-7 (citing *Jordan*, 743 F.3d at 517).[2] Mr. Vrdolyak claims the first and second factors are met but applies them only to the ***ads*** on his profile page. *See, e.g.*, Resp. at 7-8 ("communications regarding the services offered by both Avvo Advertising Attorneys and Avvo are advertisements," including "Sponsored Listings" and ads for Avvo's services, and those advertisements are for "legal services"). The question is not whether the ***ads*** are commercial

---

[1] As the Supreme Court has made clear, the First Amendment protects commercial speech if: (1) the speech concerns lawful activity; (2) the speech is truthful and not misleading; and (3) the government regulation of speech does not directly advance a substantial governmental interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Mr. Vrdolyak does not plausibly allege that Avvo speech concerns illegal activity, is false, or misleading. He does not even attempt to identify any substantial government interest in regulating Avvo's speech, much less that the IRPA advances such an interest.

[2] This test only applies where there is a "close question" whether the speech is commercial. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012). There is no close question here.

speech (they are). The question is whether the ***speech that uses Mr. Vrdolyak's name***—profile

information collected from public records—is commercial speech. The profile information is not

an advertisement, nor does it refer to a specific product.

With respect to the third factor, Avvo does not dispute it has an economic motive for

publishing attorney profile information. But "economic motivation … [is] clearly … insufficient

by itself to turn [] materials into commercial speech." *Bolger v. Youngs Drug Products Corp.*,

463 U.S. 60, 67 (1983). Were the rule otherwise, every ad-supported print publication, television

or radio station, or website would risk liability every time it placed an ad next to protected

content. As Avvo argued—and Mr. Vrdolyak fails to address—this is not the law. *See, e.g.*,

Mot. at 6-7 (citing six cases, ***none*** of which the response mentions); *Nieman v. Versuslaw, Inc.*,

512 F. App'x 635, 638 (7th Cir. 2013) ("speech is protected even when 'carried in a form that is

'sold' for profit'"; rejecting claim that websites' republication of court documents was

commercial speech because websites generated profit from the information); *Dex Media*, 696

F.3d at 963-64 ("That the yellow pages directories depend financially upon advertising does not

make them any less entitled to protection under the First Amendment.").

### 2. The ads on Mr. Vrdolyak's profile page do not transform Avvo's speech into commercial speech.

To the extent Mr. Vrdolyak claims the ads adjacent his profile information transform

Avvo's speech into commercial speech, courts have rejected this theory, too. "Simply put, there

is no legal precedent for converting noncommercial speech into commercial speech merely based

on its proximity to the latter." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 689 (2010).

Thus, in *Stewart*, the court rejected a right of publicity claim based on the publication of an ad

near an editorial feature naming the plaintiffs, independent rock musicians, in *Rolling Stone*

magazine. *Id.* The court noted that the "plaintiffs [had] not cited us to a case, and [the court's]

research has disclosed none, in which a magazine's editorial content has been deemed

transformed into commercial speech merely because of its proximity to advertisements touching

on the same subject matter." *Id.* at 687.

The Ninth Circuit rejected a similar theory in another case Avvo cited, and which Mr.

Vrdolyak also failed to address. In *Dex Media*, three companies challenged an ordinance

regulating the distribution of yellow pages directories. 696 F.3d at 955. The city argued that

because the directories contained ads, the court should apply the intermediate scrutiny applicable

to commercial speech, rather than the strict scrutiny applicable to noncommercial speech. *Id.* at

957. The Ninth Circuit rejected this argument, noting "the Ordinance regulates a yellow pages

phone book as a whole, not simply the individual advertisements contained therein. It is just as

readily apparent that telephone listings and community information contained in the directory

constitute noncommercial speech." *Id.* (citing *City of Cincinnati v. Discovery Network, Inc.*, 507

U.S. 410, 423 (1993)). So, too, here, it is "apparent"—indeed, Mr. Vrdolyak admits—that the

profile information is fully protected noncommercial speech. *See* Resp. at 9.

That Avvo publishes individual profile pages on a website rather than a traditional

hardcopy directory with multiple listings on a single page is of no moment. The First

Amendment applies to the Internet as much as it does to the brick-and-mortar world. *See Reno v.

ACLU,* 521 U.S. 844, 870 (1997) ("our cases provide no basis for qualifying the level of First

Amendment scrutiny that should be applied to this medium"). And just as the First Amendment

protects directory listings in hard copy, it also protects Avvo's online directory.

In his response, Mr. Vrdolyak emphasizes his allegation that Avvo allows advertising

"for attorneys who practice the same type of law and/or in the same geographic area," i.e.,

competitors, on profile pages. Resp. at 13. *See also id.* at 14 (Avvo "allow[s] direct

competitors—in the same practice area and/or geographic location—to advertise on his profile"). This is another variation on a flawed theme. Avvo did not use Mr. Vrdolyak's name in any advertising. Moreover, Mr. Vrdolyak does not allege (nor could he) that Avvo allowed third parties to place ads on his page specifically, i.e., by using his name. Instead, he alleges only that they may do so on the pages of attorneys in the same field and geographic area. This is a far cry from "using" Mr. Vrdolyak's name or identity.

Even if Mr. Vrdolyak could allege Avvo permitted a competitor to specifically place an ad on his profile page, that theory, too, would fail. *See Habush v. Cannon*, 828 N.W.2d 876 (Wis. Ct. App. 2013). In *Habush*, the law firm Cannon & Dunphy, a competitor of the firm Habush & Rottier, bid on the terms "Habush" and "Rottier" on three major search engines, assuring a link to its own website would appear as a "sponsored link" on the search engine results pages for "Habush" and "Rottier." *Id*. at 711. Habush and Rottier sued Cannon and Dunphy (**not** the search engines that published the ads), alleging their competitors had used their names for advertising or trade purposes, in violation of the Wisconsin right of publicity statute. *Id*. at 711. The court rejected the claim, finding that although the defendant's strategy "takes advantage of the name of the established business and its ability to draw potential customers …, the strategy does not 'use' the name of the business in the same way as putting the name or image of the business in an advertisement or on a product." *Id*. at 725. *See also* Eric Goldman & Angel Reyes III, *Regulation of Lawyers' Use of Competitive Keyword Advertising*, 2016 U. Ill. L. Rev. 103, 112 (2016) ("purchasing a rival's name does not 'use' their name for publicity rights purposes"). If targeting a lawyer's name does not state a publicity rights claim, a competitor's decision to buy ads based on geography or areas of practice certainly fails.

### 3. The authority Mr. Vrdolyak cites is inapposite.

Rather than address the First Amendment cases Avvo cited, Mr. Vrdolyak relies almost

exclusively on *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014). In *Jordan*, grocer Jewel-Osco placed an ad in a commemorative edition of *Sports Illustrated* celebrating the Basketball Hall of Fame induction of Michael Jordan. *Id.* at 512. The ad congratulated Mr. Jordan and prominently featured the Jewel-Osco logo and a pair of shoes with the number 23 (the well-known uniform number Jordan used throughout his career). The court held the ad was commercial speech. *Id.* at 522.

*Jordan* is easily distinguishable. *Jordan* involves an ad, and this case does not. In *Jordan*, the ad had an "unmistakable commercial function," *id.* at 518, but Avvo's attorney directory does not. Fundamentally, unlike Mr. Jordan, Mr. Vrdolyak cannot point to a single Avvo advertisement that mentions his name, promotes any of his noteworthy or distinctive traits, or references his identity in any other manner. Not surprisingly, there are no Avvo ads about Mr. Vrdolyak, and he has alleged none.

Mr. Vrdolyak's claim would extend *Jordan* to unprecedented territory. Under his theory, any entity that publishes truthful information about individuals—magazines and newspapers that publish newsworthy profiles, websites with information about doctors,[3] teachers,[4] and other professionals,[5] and yellow page directories—would risk civil liability if it happens to generate revenue from advertising placed by others in the vicinity of that content. As the *Dex Media* court noted, "economic reality applies here"—namely, the economic reality that almost *every* publisher of noncommercial content must generate revenue somehow. 696 F.3d at 963.[6]

---

[3] *See, e.g.*, http://www.healthgrades.com.

[4] *See, e.g.*, http://www.ratemyprofessor.com.

[5] *See, e.g.*, http://www.yelp.com/biz/vrdolyak-r-edward-chicago.

[6] Mr. Vrdolyak's attempts to distinguish prior cases involving Avvo are unavailing. **Both** cases held Avvo's publication of profiles is not "in trade or commerce," such that the Washington Consumer

Finally, Mr. Vrdolyak argues "Avvo's commercial speech is not 'inextricably intertwined' with noncommercial speech, and thus is not entitled to full First Amendment protection." Resp. at 9. This argument assumes the Court must evaluate the profile pages as a whole—both the attorney information and the ads. Not so. Avvo used Mr. Vrdolyak's name only in noncommercial speech. Further, this doctrine—which affords greater protection to commercial speech that is inextricably intertwined with noncommercial speech—does not apply to ad-supported publications. If it did, it would strip every speaker who depends on advertising—newspapers, magazines, television shows and websites containing factual information—of full First Amendment protection. *Dex Media*, 696 F.3d at 963-64 (rejecting argument that ads and listings in yellow pages directory were not inextricably intertwined and therefore directory did not merit full protection because such a rule "is contradicted by many decisions concluding that various types of mixed-content speech were fully protected even without engaging in an inextricably intertwined analysis."); *see also Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 120 (5th Cir. 1992) ("The advertisements in the Guardian were included to finance the publication. Under such circumstances, commercial speech was inextricably linked to the newspaper's non-commercial speech, making the whole paper non-commercial.").

The First Amendment fully protects Avvo's speech, and the Court should dismiss Mr. Vrdolyak's lawsuit with predudice for this reason alone.

## B. Plaintiff Has Failed to State a Claim Under the Illinois Right of Publicity Act.

Even absent the First Amendment bar to his state law claims, Mr. Vrdolyak has failed to state a claim under the IRPA for the reasons in Avvo's motion. Mr. Vrdolyak responds with two

---

Protection Act could apply. *Davis v. Avvo, Inc.*, 2012 WL 1067640 (W.D. Wash. Mar. 28, 2012); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007). In doing so, the court in *Davis* expressly rejected the plaintiff's allegation that the "placement of paid advertising in a free listing … would make such list commercial speech." *Davis*, 2012 WL 1067640, at *6.

arguments, both which lack merit.

*First*, Mr. Vrdolyak cannot survive a motion to dismiss merely by offering a conclusory allegation of a "commercial purpose." *See* Resp. at 11-12. Relying on *Flentye v. Kathrein*, 485 F. Supp. 2d 903 (N.D. Ill. Apr. 18, 2007), Mr. Vrdolyak argues that because he "alleged that Avvo's unauthorized use of his identity was for a commercial purpose," that should be the end of the matter. Resp. at 11. *Flentye*, though, relied on a liberal pleading standard that the Supreme Court has since rejected as inconsistent with Rule 8. *Compare Flentye*, 485 F. Supp. 2d at 911 (requiring defendant to show that "plaintiff can prove no set of facts in support of his claim") *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) (rejecting the "no set of facts" standard "as questioned, criticized, and explained away long enough") *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The Court has made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Therefore, Mr. Vrdolyak cannot merely allege a "commercial purpose"; he has to allege facts sufficient to make an actionable commercial purpose plausible.

*Second*, Mr. Vrdolyak has not alleged facts sufficient to show that Avvo's use is for "commercial purposes" rather than for "noncommercial purposes." Mr. Vrdolyak's opposition posits that: (1) the "noncommercial purposes" exempted by the IRPA are restricted to the examples in the statute, which do not include Avvo's use of his name in its lawyer directory; and (2) advertising by other lawyers on Avvo.com renders the listing of Mr. Vrdolyak's professional information a "commercial purpose." Neither argument has merit.

The IRPA exempts the "use of an individual's identity for non-commercial purposes,

*including* any news, public affairs, or sports broadcast or account, or any political campaign."

765 ILCS 1075/35 (emphasis added). The use of the "open-ended transitional phrase"

"including" demonstrates the legislature did not intend to *limit* the scope of "non-commercial

purposes" to those four uses, but rather to establish a general exemption that includes specific

examples. *See Peerless Indus., Inc. v. Crimson AV LLC*, 2013 WL 5498249, at \*4 (N.D. Ill. Oct.

1, 2013). Moreover, every example of a "noncommercial purpose" includes speech that relies on

advertising for support: news, reporting of public affairs, sports broadcasts, and political

campaigns; the exemption plainly includes other ad-supported media. *See* 765 ILCS 1075/35.

Finally, Mr. Vrdolyak gives no reason why the name, educational background, and disciplinary

history for officers of the court do not concern "public affairs" or matters of "public concern."

*See Best v. Berard*, 776 F. Supp. 2d 752, 759 (N.D. Ill. 2011) ("noncommercial purposes"

exemption applies to "an entertainment program that conveys truthful footage of an arrest");

*Davis v. Avvo*, 2012 WL 1067640 (characterizing Avvo website as "a vehicle for discussion of

public issues," *id.* at \*3, adopting the *Browne* court's holding that the act of publishing

information about an attorney is not "trade or commerce").

Mr. Vrdolyak also misreads the "commercial purpose" definition of the IRPA. The

statute defines "commercial purpose" as "the public use or holding out of an individual's identity

(i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or

services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services;

or (iii) for the purpose of fundraising." 765 ILCS 1075/5. Mr. Vrdolyak claims the words "*in

connection with*" means the law includes use accompanied by advertising. Resp. at 12. But the

legislature expressly addressed the extent to which the law applies to advertising in subsection

(ii); and, as Mr. Vrdolyak admits, Avvo did not use his name *in an advertisement*. In any event,

courts must interpret the IRPA with an "eye toward avoiding a First Amendment violation."

*Berard*, 776 F. Supp. 2d at 759. As with his other theories, Mr. Vrdolyak's broad interpretation

of "in connection with" would extend the definition of "commercial purpose" to include, and

therefore prohibit, many constitutional exercises of noncommercial speech—simply because that

speech relies on advertising to support it. *Supra* at Part II.A. His theory would eliminate all

publications (such as Avvo) that provide consumers directory listings of professionals and

guidance about their education, qualifications, and disciplinary history

Mr. Vrdolyak also cites *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923 (Ill. App.

Ct. 2013) and *Abbs v. Lily's Talent Agency, Inc.*, 2012 Il App (1st) 103726-U (Sept. 26, 2012).

In *Trannel*, a magazine produced a "media kit" featuring a photograph of the plaintiff that it

distributed solely to advertisers. *Id.* at 926-27. The very purpose of the kit was to promote

advertising space in the magazine to advertisers. *Id. Trannel* is no different than *Jordan*: the

defendant used the plaintiff's identity to **promote its product**. In *Abbs*, the court rejected a

mother's claim that a modeling agency used an image of her child for commercial purposes

when it allowed the image to be used by Gerber on Gerber products. *Id.* ¶ 25. The court

"disagree[d]" that "the Act provides for such derivative or vicarious liability…. If the legislature

intended that an individual would be liable under the Act not only for his own use of an

individual's identity, but also if he arranges for the use of the identity by another individual, then

such liability would have been expressly stated in the Act's language." *Id.* ¶¶ 26-27. Here, even

assuming Mr. Vrdolyak has a claim premised on the use of his name for purposes of advertising

(and he does not), that claim lies against the individual advertisers, not Avvo. As in *Habush*, if

anyone "uses" Mr. Vrdolyak's name to create competitive ads, it is the advertisers themselves.

Ultimately, Mr. Vrdolyak's response loses sight of the underlying purpose for the IRPA:

"it is not the use of the plaintiff's name which constitutes a tort but rather the appropriation of the value of his name and reputation." *Maremont v. Susan Fredman Design Grp., Ltd.*, 2011 WL 6101949, at *6 (N.D. Ill Dec. 7, 2011) (quoting *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982)).  As Mr. Vrdolyak's profile page shows, Avvo uses his name and professional information (and that of nearly every other Illinois attorney) *not* to associate itself with the reputation of any attorney but for a "non-commercial" purpose: to publish a directory of officers of the court to Illinois consumers.  His right of publicity claim fails.

### III.  CONCLUSION

The court may dismiss without leave to amend "if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).  Any amendment here would be futile because the theory on which Mr. Vrdolyak bases his claims fails as a matter of law. The Court should dismiss this entire action with prejudice and award Avvo its attorneys' fees and costs in pursuing this motion as provided for under the IRPA.  *See* 765 ILCS 1075/55.

Respectfully submitted,

AVVO, INC.

By:   /s/ *Ambika K. Doran*
          One of its attorneys

David P. Sanders (ARDC #2452359)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654-3456
Telephone:  (312) 222-9350


Bruce E.H. Johnson
Ambika K. Doran
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone:  (206) 622-3150

**CERTIFICATE OF SERVICE**

 Ambika K. Doran, an attorney, certifies that on August 10, 2016, she caused a copy of the foregoing Reply Brief in Support of Motion to Dismiss First Amended Complaint to be served upon all counsel of record by means of the Court's ECF filing system.


      /s/ *Ambika K. Doran*
      Ambika K. Doran