IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN VRDOLYAK, individually and on behalf of those similarly situated, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>AVVO, INC., )<br>)<br>Defendant. ) | Case No. 16 C 2833<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Vrdolyak, individually and on behalf of others similarly situated, has brought an amended putative class action complaint against defendant Avvo, Inc., alleging that defendant violates the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 et seq., by using plaintiff's identity for commercial purposes without plaintiff's consent.[1] Defendant has moved to dismiss for failure to state a claim, arguing that its allegedly wrongful conduct is fully protected under the First Amendment to the United States Constitution and, even if not, defendant's use of plaintiff's name is for a non-commercial purpose exempted under the IRPA. For the reasons described below, defendant's motion is granted.

**FACTS**[2]

Defendant operates the website Avvo.com on which it promotes certain legal services, and publishes a directory of attorneys in the United States. It creates a profile page for each

---

[1]Plaintiff's amended complaint also asserts a claim for common law misappropriation of identity (Count II), but plaintiff has conceded that the common law tort has been supplanted by the IRPA and has withdrawn Count II.

[2]Unless otherwise noted the facts are taken from plaintiff's amended complaint and are assumed true for purposes of the instant motion.

attorney that consists of information gleaned from public records "such as bar admissions and other court or regulatory records." The profile page contains the attorney's name, education, address, phone number, and practice area. Defendant provides a rating for each attorney on a scale of 1 to 10. The rating is purportedly based on information available to defendant which, for most attorney profiles, consists of the number of years in practice. Defendant's rating system has been the subject of other litigation, see Browne v. Avvo, Inc., 525 F.Supp.2d 1249 (W.D. Wash. 2007), but is not at issue in the instant matter.

Defendant does not charge attorneys for listing their profiles, but does not get their consent either. It does not charge consumers for using or viewing the information provided on the profiles. An attorney can "claim" his or her profile for free, and then make changes to the information provided and add additional information such as awards and case histories. According to plaintiff, defendant "generates revenue by selling legal services, advertising, and other services primarily to lawyers." Specifically, plaintiff alleges that defendant sells two levels of advertising to lawyers. The first, called "Avvo Advertising" allows lawyers to purchase advertising and "define who sees your ad based on practice area and geography." Lawyers who purchase Avvo Advertising have their ads (basically a link to their own profile) displayed as "Sponsored Listings" on the profile pages of attorneys who do not pay defendant, and who practice in the same geographically and/or practice areas as the paying attorney.

For an additional fee, attorneys can join "Avvo Pro" which guarantees them that no "Sponsored Listings" or other advertising will appear on their profile pages. Plaintiff claims that defendant's implementation of Avvo Pro is a "means to coerce Non-Paying Attorneys into paying Defendant a marketing fee so that Defendant will not misappropriate Non-Paying

attorneys' identities or sell advertising space on Non-Paying attorneys' profile pages to [their] competitors."

**DISCUSSION**

Plaintiff claims that by placing ads for competing attorneys on his profile page (as well as ads for defendant's own legal services) defendant has misappropriated plaintiff's identity for commercial purposes in violation of the IRPA. To state a claim under the IRPA, plaintiff must allege: (1) the use of his identity; (2) for commercial purposes; and (3) without his consent. 765 ILCS 1075/30; Best v. Berard, 776 F. Supp.2d 752, 756 (N.D. Ill. 2011).

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Such a motion tests the sufficiency of the complaint, not the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating the motion, the court accepts the well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. McMillian v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006). To state a claim, the complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level showing that the claim was plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To be plausible on its face, the complaint must plea facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendant argues that the complaint fails to state a claim for two separate but related reasons. First, it argues that its conduct is speech that is fully protected by the Free Speech Clause of the First Amendment. Next, it argues that its use of plaintiff's name is exempted from

the IRPA. The two arguments are related because they rely on defendant's assertion that its speech is non-commercial in nature.

The First Amendment prohibits the government from "abridging the freedom of speech." United States Const. Amendment I. "[N]ot all speech is of equal First Amendment importance," however, meaning certain categories of speech receive a lesser degree of constitutional protection. Jordan v. Jewel Food Stores, Inc., 743 F.3d 509, 515 (7th Cir. 2014) (quoting Snyder v. Phelps, __ U.S. __, 131 S.Ct. 1207, 1215 (2011)). Commercial speech is one such category that does not receive full constitutional protection. Id. Instead, commercial speech is entitled only to intermediate scrutiny, and as such may be subject to the IRPA. See Central Hudson Gas & Elec. Corp. v. Public Service Comm. of N.Y., 447 U.S. 557, 563-66 (1980).

For purposes of the instant case, defendant argues that its listing and profiles, including the "Sponsored Listings," is fully protected non-commercial speech subject to strict scrutiny that can be restricted "only in the most extraordinary circumstances." Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 65 (1983). Defendant argues that no such circumstances are present, preventing the court from applying IRPA to defendant's publication and providing a complete defense to plaintiff's claims. Plaintiff seems to accept this premise, or at least has not argued differently, choosing instead to argue only that defendant's actions constitute commercial speech that is not fully protected. As the Seventh Circuit noted in Jordan, however, even if defendant's listings qualify as non-commercial speech, "it's far from clear that [the plaintiff's] . . . right of publicity claim [ ] fail[s] without further ado." Jordan, 743 F.3d at 514. Nonetheless, because plaintiff appears to agree (or perhaps assume) that his claim is barred if defendant's actions are considered non-commercial, the court will proceed on that basis.

4

According to the Supreme Court, "commercial speech is speech that proposes a commercial transaction." Board of Trustees of State University of New York v. Fox, 492 U.S. 469, 482 (1989). The Seventh Circuit has explained that "the hallmark of commercial speech is that it pertains to commercial transactions, including those facilitated through the use of a trademark." Jordan, 743 F.3d at 516 (quoting Briggs & Stratton Corp. v. Baldridge, 728 F.2d 915, 917-18 (7th Cir. 1984). This definition is, however, just a starting point. Id. Thus, "[s]peech that does no more than propose a commercial transaction 'falls within the core notion of commercial speech,' but other communications also may constitute commercial speech notwithstanding the fact that they contain discussions of important public issue." Id. (quoting Fox, 492 U.S. at 475).

Classifying speech that contains both commercial and non-commercial elements can be difficult. Interpreting Bolger, 463 U.S. at 66-67, the Seventh Circuit has listed relevant considerations to include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." U.S. v. Benson, 561 F.3d 718, 725 (7th Cir. 2009). These are just general considerations, however, and not all are necessary. Jordan, 743 F.3d at 517.

Defendant describes plaintiff's theory as "[defendant's] publication of truthful information from public records in a directory of lawyers – which [plaintiff] admits is constitutionally protected speech – is unlawful because advertising appears next to this truthful information." Viewed in this manner, defendant argues that its listings are simply a computerized version of the paper "yellow pages" listings that received full constitutional protection in Dex Media West, Inc. v. City of Seattle, 696 F.3d 952, 962 (9th Cir. 2012)

5

(concluding that "publications like yellow pages directories and newspapers receive full First Amendment protection not only because their content is somehow inextricably intertwined, but because, as a threshold matter, they do not constitute commercial speech.").

Plaintiff argues that defendant's view is myopic, focusing only on the "directory" rather than on the individual advertisements. Under plaintiff's theory, placing another attorney's "ad" or "Sponsored Listing" on plaintiff's profile page turns the entire profile into an ad for the sponsored attorney. Plaintiff relies predominately on Jordan, in which the defendant Jewel placed an "ad" in a commemorative issue of *Sports Illustrated* honoring Michael Jordan's induction into the Basketball Hall of Fame. Jordan sued Jewel claiming violations of his trademark and IRPA. Jewel argued that its ad did not propose a commercial transaction and thus was not commercial speech. The Seventh Circuit disagreed, noting that "[a]n advertisement is no less 'commercial' because it promotes brand awareness or loyalty rather than explicitly proposing a transaction in a specific product or service." Jordan, 743 F.3d at 518. The court described Jewel's ad as serving two functions: to congratulate Jordan on his induction into the Hall of Fame and to promote Jewel's supermarkets. It found the ad's commercial nature apparent and, applying the Bolger framework for speech that contains both commercial and non-commercial elements, concluded that the ad was commercial speech. Id. at 519. Based on this holding, plaintiff argues that the "Sponsored Links" are ads for each attorney's "brand."

Defendant attempts to distinguish Jordan by arguing that it involved an ad that had an "unmistakable commercial function," id. at 518, while defendant's directory does not. In particular, defendant argues that unlike Jordan, in which Jewel's ad mentioned Jordan by name,

6

"plaintiff cannot point to a single Avvo Advertisement that mentions his name, promotes any of his noteworthy or distinctive traits or references his identify in any other manner."

At the end of the day, this issue depends on whether one views defendant's actions as providing an attorney listing or directory, with advertisements placed on it, or whether one views each attorney profile as an advertisement for the "Sponsored Listing." But not every attorney profile contains an advertisement and, as defendant points out, none of the advertisements used plaintiff's name. The court views what defendant does as more akin to the yellow pages directory, which receives First Amendment protection, than the advertisement that Jewel placed in Jordan.

The court agrees with defendant that to hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals such as teachers, directors and other professionals, such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field. Defendant's actions are more like those of the magazine *Sports Illustrated* than Jewel. Defendant publishes non-commercial information and sells and places advertisements within that information. *Sports Illustrated* publishes a magazine that contains fully protected non-commercial speech. Within the magazine it sold and published advertisements, including Jewel's. Jewel's advertisement was commercial speech. The "Sponsored Listings" are commercial speech. Jewel's ad did not convert the entire commemorative issue into commercial speech. Nor do the Sponsored Listings turn the entire attorney directory into commercial speech. Consequently, the court concludes that defendant's publications are fully protected by the First

Amendment, and as plaintiff apparently concedes, the application of IRPA to them do not survive a strict scrutiny analysis.

## **CONCLUSION**

For the reasons stated above, the court concludes that defendant's speech is non-commercial and fully protected by the First Amendment. Consequently, defendant's motion to dismiss (Doc. 24) is granted.

**ENTER:** **September 12, 2016**

_____
**Robert W. Gettleman
United States District Judge**